UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTOINE AMIRA,<br><br>                *Plaintiff*,<br><br>v.<br><br>NETFLIX, INC.,<br>STORY SYNDICATE LLC, and<br>ARCHER GRAY PRODUCTIONS LLC,<br><br>                *Defendants*. | Civil Action No.:<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff Antoine Amira ("Plaintiff"), by and through his attorneys, Hunton Andrews Kurth LLP, for his Complaint against defendants Netflix, Inc., Story Syndicate LLC, and Archer Gray Productions LLC ("Defendants"), alleges, based on his personal knowledge and otherwise on information and belief, the following:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action for copyright infringement based on Defendants' unauthorized and blatant copying of his video interview with Rex Heuermann, the alleged Long Island serial killer.

2. Plaintiff is a digital content creator who conducted a video interview with Mr. Heuermann prior to his arrest.

3. Mr. Heuermann, an architect from Long Island, was recently arrested and charged in connection with the notorious Gilgo Beach serial killings—a series of murders of primarily sex workers whose remains were found along Ocean Parkway between 1993 and 2011.

4. Plaintiff's video is the only known recording of Mr. Heuermann in which he openly discusses his life and work.

5. Following Mr. Heuermann's arrest and in anticipation of his upcoming trial, there has been significant national and international interest in the interview.

6. In fact, numerous networks and production companies have contacted Plaintiff to obtain licenses for the interview, and have lawfully displayed it on their platforms or websites.

7. Defendants are producers and distributors of a documentary entitled *Gone Girls: The Long Island Serial Killer*.

8. Defendants have made the documentary available for streaming both in the United States and internationally, generating substantial revenue as a result.

9. Unlike the other networks and production companies that actually bothered to reach out and license Plaintiff's work, Defendants decided it was easier to simply copy it—without paying Plaintiff a single dime.

10. And Defendants didn't just copy a clip or two; they shamelessly plastered stolen segments of Plaintiff's interview all over the documentary. In fact, they practically parade nearly a full minute of Plaintiff's interview.

11. This is unfair to Plaintiff—and Defendants should have compensated him for his work.

12. Accordingly, Plaintiff sues for copyright infringement under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 *et seq*.

13. Plaintiff seeks all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiff's damages and Defendants' profits from their willfully infringing conduct, and other monetary relief.

**JURISDICTION AND VENUE**

14. This Court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15.     This Court has personal jurisdiction over Defendants Archer Gray Productions LLC and Story Syndicate LLC because both entities reside in this district. The Court also has personal jurisdiction over Defendants because they have had regular and consistent contacts with the state of New York, sufficient to confer personal jurisdiction.

16.     Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendants Archer Gray Productions LLC and Story Syndicate LLC reside in this district. Under 28 U.S.C. § 1391(b)(2), venue is also proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

17.     Plaintiff Antoine Amira is an individual who resides in the Bronx, New York.

18.     Defendant Netflix, Inc. ("Netflix") is a corporation that is incorporated in Delaware and has its principal place of business in California. On information and belief, Netflix is the distributor of the documentary *Gone Girls: The Long Island Serial Killer*. Upon information and belief, Defendant Netflix has a substantial number of subscribers within this judicial district who pay for and receive streaming services from Defendant Netflix.

19.     Defendant Story Syndicate LLC ("Story Syndicate") is a limited liability company formed under the laws of New York and does business in New York at 122 E. 42nd Street, 18th Fl., New York, NY 10168. On information and belief, Story Syndicate is a producer of the documentary *Gone Girls: The Long Island Serial Killer*.

20.     Defendant Archer Gray Productions LLC ("Archer Gray") is a limited liability company formed under the laws of New York and does business in New York at 122 Hudson Street, 2nd Fl., New York, NY 10013. On information and belief, Archer Gray is a producer of the documentary *Gone Girls: The Long Island Serial Killer*.

## FACTS

### A. Plaintiff and His Copyrighted Work

21. Plaintiff is a digital content creator recognized for the video series *Lunchtime* and *L'Interview by Antoine*.

22. He created a YouTube channel titled Bonjour Realty, where he regularly published episodes from both series.

23. Plaintiff established a consistent posting schedule, releasing new content every Tuesday and Thursday. On Tuesdays, he showcased rental apartment listings in the *Lunchtime* series—a name chosen to reflect the common practice among New Yorkers of exploring real estate options during their lunch breaks.

24. On Thursdays, Plaintiff released episodes of *L'Interview by Antoine*, featuring interviews on a range of topics. Twice a month, he interviewed professionals within the real estate industry, including architects, electricians, and construction experts.

25. The other two episodes each month highlighted individuals outside the real estate field who are part of the fabric of New York City's culture, such as a Mister Softee truck operator, a fashion designer, a DJ, and a dog trainer.



26.     Plaintiff has appeared as a guest on CBS New York, Banfield Show on NewsNation, and Dateline.

27.     His work reflects a commitment to engaging audiences with informative and thought-provoking content.

28.     One of Plaintiff's most popular works on *L'Interview by Antoine* is his interview with Rex Heuermann, the alleged Long Island serial killer.

29.     Prior to his arrest in 2023, Mr. Heuermann was a New York-based architect who founded and operated RH Consultants and Associates in Manhattan.

30.     On February 6, 2022, Plaintiff conducted an interview of Mr. Heuermann, in which they discussed his work as an architect.

31.     Plaintiff created a video recording of the interview ("Copyrighted Work").



32.     As a result, Plaintiff owns any and all copyright rights in the Copyrighted Work. True and correct copies of a few snapshots of the Copyrighted Work are attached hereto as Exhibit A.

33.     The Copyrighted Work is wholly original, and Plaintiff is the exclusive owner of all rights, title, and interest, including all rights under copyright, in the Copyrighted Work.

34.     Plaintiff is the owner of valid and subsisting United States Copyright Registration No. PA 2-542-789 for the Copyrighted Work, issued by the United States Copyright Office on July 31, 2025. Attached as Exhibit B is a true and correct copy of the registration certificate.

35.     Plaintiff has displayed the Copyrighted Work by making it available on his YouTube channel.

36. Given that Plaintiff's interview is the only known live recording of Mr. Heuermann prior to his arrest and he openly speaks about his professional and personal life, the video has generated significant public interest.

37. Indeed, numerous parties have reached out to Plaintiff and requested a license to use the Copyrighted Work.

38. For example, the following networks or production companies have reached out to Plaintiff and requested a license to use segments of the Copyrighted Work: ABC, CBS, NBC, CNN, NewsNation, Unhwa Broadcasting Corporation (TV Show "Superpol" (South Korea)), Clearance Pro for People Magazine, Texas Crew, Nextstar-PIX 11, and Empress Films (UK production).

39. The Copyrighted Work is of significant value to Plaintiff because he has been able to receive licensing fees from others to use the footage for their programs.

**B.   Defendants' Infringing Conduct**

40. On information and belief, Defendant Archer Gray is a New York-based media company specializing in the production, financing, and distribution of film and television content. Archer Gray partners with filmmakers and creators to bring projects to audiences worldwide. In addition to producing original content, Archer Gray also manages a distribution arm that brings independent films to market.

41. On information and belief, Defendant Story Syndicate is a film and television production company known for creating documentary-style storytelling and narrative projects that explore social, cultural, and political issues.

42. Defendant Netflix is a streaming service company that provides on-demand access to a vast library of movies, TV shows, documentaries, and original content.

43. Recently Defendants have published, reproduced, publicly displayed, distributed, and sold, or caused to be published, reproduced, publicly displayed, distributed, and sold a documentary entitled *Gone Girls: The Long Island Serial Killer*.



44. Upon information and belief, Netflix has made the documentary available on its platform for viewing both within the United States and internationally.

45. This documentary explores the case of the unidentified serial killer believed to have murdered and dumped the bodies of numerous women along Long Island's beaches. The film delves into the investigation, the victims' stories, and the impact on their families, while highlighting challenges faced by law enforcement in solving the case. It sheds light on the broader issues of missing and exploited women, aiming to raise awareness and seek justice for the victims.

46. Attached hereto as Exhibit C is a printout depicting the documentary on Netflix's website. Netflix appears to be the distribution company for the documentary.

47.     Attached hereto as Exhibit D is a printout of the IMDb page for this documentary, which identifies Defendants Archer Gray and Story Syndicate as the production companies.

48.     The documentary features three segments from Plaintiff's interview with Rex Heuermann.

49.     All three segments appear in Episode 3 at the following approximate timestamps: 17:00-17:23, 17:51-18:09, and 28:02-28:10.

 



50.     These are exact copies of segments of Plaintiff's Copyrighted Work.

51.     Defendants, however, never sought any permission from Plaintiff for exploiting his work.

52. Defendants' reproduction, public display, and distribution of these portions of the Copyrighted Work is without Plaintiff's authorization, consent, or knowledge, and without any compensation to Plaintiff.

53. The documentary exploiting Plaintiff's Copyrighted Work is now available on Netflix. On information and belief, Defendants continue to display the segments of Plaintiff's interview with Mr. Heuermann as part of their documentary.

54. On information and belief, Defendants' identical copying and exploitation of portions of the Copyrighted Work was willful, and in disregard of, and with indifference to, the rights of Plaintiff.

55. On further information and belief, Defendants' intentional, infringing conduct was undertaken to reap the creative and artistic benefit and value associated with the Copyrighted Work.

56. By failing to obtain Plaintiff's authorization to use the Copyrighted Work or to compensate Plaintiff for the use, Defendants have avoided paying license fees and other costs associated with permission to exploit the Copyrighted Work, as well as the restrictions that Plaintiff is entitled to and would place on any such exploitation as conditions for Plaintiff's permission, including the right to deny permission altogether.

57. Plaintiff called Defendant Story Syndicate on or about April 10, 2025.

58. On April 10, 2025, Plaintiff also sent an invoice for licensing his Copyrighted Work to David Hyman, Chief Legal Officer for Netflix.

59. Attached hereto as Exhibit E is a true and correct copy of Plaintiff's invoice to Netflix.

60. To date, Plaintiff has received no response to his communications.

61. As a result of Defendants' actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and sale of portions of the Copyrighted Work. Defendants have never accounted to or otherwise paid Plaintiff for their use of these portions of the Copyrighted Work.

62. Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

**COUNT ONE**
**FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**

63. Plaintiff repeats and realleges paragraphs 1 through 62 hereof, as if fully set forth herein.

64. The Copyrighted Work is an original video of an interview with Rex Heuermann. It contains copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et seq*. Plaintiff is the exclusive owner of rights under copyright in and to the Copyrighted Work. Plaintiff owns a valid copyright registration for the Copyrighted Work. A copy of the registration certificate is attached as Exhibit B.

65. Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, public display, and sale of portions of the Copyrighted Work without Plaintiff's permission, Defendants have directly infringed Plaintiff's exclusive rights in the Copyrighted Work in violation of 17 U.S.C. § 501.

66. On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the Copyrighted Work, and has enabled Defendants illegally to obtain profit therefrom.

67. As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant

to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, and an accounting of and a constructive trust with respect to such profits.

68. Plaintiff is entitled to damages in an amount in excess of $120,000 for Defendants' willful infringing conduct.

69. Plaintiff further is entitled to his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

70. As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the Copyrighted Work. Therefore, Plaintiff is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

1. That Defendants have violated 17 U.S.C. § 501.

2. Granting an injunction permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

    a. distributing, marketing, advertising, promoting, displaying, performing, or selling or authorizing any third party to distribute, market, advertise, promote, display, perform, or sell the Copyrighted Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work; and

      b.      aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraph (a).

3.      That Defendants be ordered to provide an accounting of Defendants' profits attributable to Defendants' infringing conduct, including Defendants' profits from sales and any other exploitation of the Copyrighted Work, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work.

4.      That Defendants be ordered to destroy or deliver up for destruction all materials in Defendants' possession, custody, or control used by Defendants in connection with Defendants' infringing conduct, including without limitation all remaining copies of the Copyrighted Work and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Work, as well as all means for manufacturing them.

5.      That Defendants, at their own expense, be ordered to recall the Copyrighted Work from any distributors, retailers, vendors, or others that have distributed the Copyrighted Work on Defendants' behalf, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work, and that Defendants be ordered to destroy or deliver up for destruction all materials returned to it.

6.      Awarding Plaintiff:

      a.      Defendants' profits obtained as a result of Defendants' infringing conduct, including but not limited to all profits from sales and other exploitation of the Copyrighted Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work, or in the Court's discretion, such amount as the Court finds to be just and proper;

  b. damages sustained by Plaintiff as a result of Defendants' infringing conduct, in an amount to be proven at trial; and

  c. Plaintiff's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

 7. Awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums.

 8. Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 19, 2025         Respectfully Submitted,

                */s/ Armin Ghiam*
                Armin Ghiam
                HUNTON ANDREWS KURTH LLP
                200 Park Avenue
                New York, NY 10166
                Tel.: (212) 309-1000
                Fax: (212) 309-1100
                Email: aghiam@Hunton.com

                *Attorneys for Plaintiff*
                *Antoine Amira*